**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JAYMIE QUIGLEY, | ‖ | |
| Plaintiff, | ‖ | **No. 06-CV-4053-DEO** |
| vs. | ‖ | |
| DALE WINTER, | ‖ | **ORDER** |
| Defendant. | ‖ | |

_____

## I.  INTRODUCTION

Pending before the Court are defendant's motion for judgment as a matter of law, motion for new trial, motion to alter or amend judgment (Docket No. 68) and plaintiff's motion for attorney fees (Docket No. 71).  The plaintiff here, Jaymie Quigley, filed a lawsuit against the defendant, Dale Winter, under Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § § 3601 et seq. ("Fair Housing Act" or "FHA"), and the Iowa Civil Rights Act, Iowa Code § 216.1 et seq., alleging discrimination on the basis of sex.  This Court held a jury trial in this case commencing on April 14, 2008, and ending with a jury verdict on April 21, 2008.

The jury found in favor of the plaintiff and awarded compensatory and punitive damages.  Specifically, the jury found that the defendant sexually harassed the plaintiff,

discriminated against the plaintiff on the basis of sex, and coerced, intimidated or interfered with the plaintiff in the exercise of her rights. The jury awarded the plaintiff $13,685.00 in compensatory damages and $250,000.00 in punitive damages, the latter after having found that the defendant's conduct was motivated by evil motive or intent or that he was reckless or callously indifferent to the plaintiff's rights. The jury also awarded the plaintiff $400.00 for her breach of contract claim.

## II. DEFENDANT'S POST-TRIAL MOTIONS

### a. Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b) allows a party to renew a motion for judgment as a matter of law if "for any reason, the court does not grant a motion for judgment as a matter of law at the close of all evidence . . . ." "A judgment as a matter of law is appropriate if 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894, 899-900 (8th Cir. 2006) (quoting FED. R. CIV. P. 50(a)(1)). In reviewing the motion,

the Court must "grant [the nonmoving party] all reasonable inferences and view the facts in the light most favorable to [the nonmoving party]." Id. at 900 (citing Webner v. Titan Distrib., Inc., 267 F.3d 828, 833 (8th Cir. 2001)). The Court must grant judgment as a matter of law "when the evidence is such that, without weighing the credibility of the witnesses, there is a complete absence of probative facts to support the verdict." Day v. Toman, 266 F.3d 831, 836 (8th Cir. 2001) (citing Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 634 (8th Cir. 1998)). "The evidence is viewed in the light most favorable to the jury verdict which should not lightly be set aside." Dominic v. DeVilbiss Air Power Co., 493 F.3d 968, 974 (8th Cir. 2007)(citing Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894, 900 (8th Cir. 2006).

At trial, the plaintiff presented evidence that female tenants were discriminated against and that male tenants were not. The plaintiff, as well as three former female tenants, all testified that they were harassed. Male tenants were not treated in a similar manner. Plaintiff's witness, Pat Johnson, an investigator from the Sioux City Human Rights

Commission, testified that other women (but not men) had complained to her about similar treatment from Mr. Winter. Also, Ms. Quigley testified that her problems with Winter occurred when her boyfriend moved out of her house, i.e., that Winter did not harass her when there was a male presence. The jury is allowed to infer based upon this that male and female tenants were treated differently.

The plaintiff also set forth evidence that she was sexually harassed. The plaintiff testified that the defendant stroked his hand on her bare stomach and said that his, "eagle eyes haven't seen everything yet." She also testified that he rubbed his groin area often when in her presence, made comments about the size of Ms. Quigley's 14-year old sister's breasts in her presence and stood unnecessarily close to her, requiring her to come into close contact with him when trying to move away. Ms. Quigley also testified that, on occasion, he would rub up against her when passing by. She testified that he stroked her arm while driving and showing her properties. She also testified that he would come to her home unannounced and lounge on her sofa and she believes that he had entered her bedroom in her absence and moved her bathrobe

to a place where she never leaves it.

The defendant seems to argue, as he did at trial, that what the plaintiff testified to was not true so he is therefore entitled to post-trial relief.  He also seems to argue that his "glib comments" and unwanted touchings were not so bad as to entitle Ms. Quigley to a jury verdict.  The defendant submitted sexual harassment cases in an employment setting to argue that Mr. Winter would have needed to harass Ms. Quigley much more in order for his conduct to be actionable.  The Court is not persuaded that sexual harassment at work is akin to sexual harassment in one's own home by one's own landlord who just so happens to also have a key to the house.  A tenant should be able to feel secure in her own home, and there was testimony from Ms. Quigley that she was not.

The defendant also argues that the Eighth Circuit does not recognize a cause of action for sexual harassment causing a hostile housing environment.  The plaintiff first argues that the defendant is barred from making this argument now as he did not advance it in a "pre-verdict motion".  The Court is persuaded that the defendant adequately presented this issue

to the Court during the trial proceedings.  However, the Court
also believes that the Eighth Circuit has established a cause
of action for sexual harassment causing a hostile housing
environment.  Neudecker v. Boisclair Corp., 351 F.3d 361, 364
(8th Cir. 2003), states that, "disability harassment in the
housing context is actionable under the FHA."  And, as the
plaintiff points out, this holding was based on the fact that,
"some federal courts have permitted claims under the FHA when
sexual harassment causes a hostile housing environment."  Id.
Thus, the Court is persuaded that the Eighth Circuit
recognizes this cause of action.

The question this Court must answer when ruling on a
motion for judgment as a matter of law is whether there is a
complete absence of probative facts that support the jury
verdict, without questioning the plaintiff's credibility.  The
Court is persuaded that the facts set forth above would
support the jury's verdict if it, as it obviously did, found
the plaintiff and other witnesses credible.  For these
reasons, the defendant's motion for judgment as a matter of
law is **denied**.

**b.  Motion for New Trial**

Federal Rule of Civil Procedure 59(a) states in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

"[A]uthority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980).  The trial court is not, however, "'free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'" Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 186 (8th Cir. 1972) (quoting Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35 (1944)).  Ultimately, "[w]hen through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not." White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992).

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The defendant claims that the Court should not have given the quid pro quo harassment instruction to the jury because there was no evidence presented of the same. "'Quid pro quo' harassment occurs when housing benefits are explicitly or implicitly conditioned on sexual favors." Honce v. Vigil, 1 F.3d 1085, 1089 (10th Cir. 1993).

Ms. Quigley testified that when she requested that Mr. Winter return her housing security deposit, his response was

to stroke her bare stomach with his hand and say, "my eagle eyes haven't seen everything yet." The plaintiff's theory was that Mr. Winter was intimating that he would only return the security deposit if Ms. Quigley engaged in some sort of sexual act with him. Mr. Winter did not, in fact, ever return Ms. Quigley's deposit; and it became a claim in this case. The Court is persuaded that this evidence was sufficient for a reasonable jury to return a verdict finding quid pro quo harassment. Thus, the Court is persuaded that giving the instruction was proper.

Testimony of other former female tenants allegedly harassed by Mr. Winter, or "me too" evidence, was properly admitted. The United States Supreme Court has held that, in an age discrimination case, "whether evidence of discrimination by other supervisors is relevant...is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Sprint/United Management Co. v. Mendelsohn, ___ U.S. ___, 128 S. Ct. 1140, 1147, 170 L. Ed. 2d 1 (2008). The Court is persuaded that the theory of this "age" discrimination case should apply in this sexual

harassment case now before the Court. There is no per se rule that "me too" evidence is inadmissible; a court must determine relevance and prejudice under Federal Rules of Evidence 401 and 403 in each case. See id.

In this case, the Court only allowed the plaintiff to present "me too" testimony of previous female tenants of this particular landlord. The Court excluded the testimony of Ms. Quigley's proposed witness, Mary Davis, after allowing her to be examined outside the presence of the jury because her experiences with Mr. Winter were too remote in time and the Court found that her testimony would be more prejudicial than probative. The Court carefully considered and weighed the testimony of former tenants and is persuaded, as it was at trial, that the "me too" evidence allowed was more probative than prejudicial and was properly admitted.

The Court is also persuaded that it properly excluded evidence of Ms. Quigley's mental state, including testimony by defendant's proposed witness, counselor Dawn Nolan. The defendant argues that Ms. Quigley put her mental state into issue when she alleged damages for emotional distress. However, in order to recover for general emotional distress,

a plaintiff is not required to prove a medical or
psychological condition. "To prove emotional distress,
medical or other expert evidence is not required." Hammond v.
Northland Counseling Center, Inc., 218 F.3d 886, 893 (8th Cir.
2000). Ms. Quigley's "own testimony, along with the
circumstances of a particular case, can suffice to sustain the
plaintiff's burden in this regard." Id. (quoting Turic v.
Holand Hospitality, Inc., 85 F.3d 1211, 1215 (6th Cir. 1996).
Even though medical evidence is not required for a plaintiff
to recover for emotional distress, the Court must still weigh
the probative versus the prejudicial value of the evidence to
determine its admissibility. In this case, the Court is
persuaded that, other than the stipulated to statement read to
the jury about Ms. Quigley's past mental health treatment, her
mental health medical records would have been more prejudicial
than probative.[1] The jury could have inferred from Ms.
Quigley's testimony that the instances she described could
have caused her emotional distress without the production of
medical records. For these reasons, the defendant's motion

_____

[1]That stipulation read as follows, "Both parties agree
that it is stipulated that the plaintiff had a history of
depression and anxiety before January of 2004."

11

for new trial is **denied**.

### c. Motion to Alter or Amend a Judgment

Federal Rule of Civil Procedure 59(e) allows a party to motion a court to alter or amend a judgment.

> Federal Rule of Civil Procedure 59(e) was adopted to clarify a district court's power to correct its own mistakes in the time period immediately following entry of judgment. (Citations omitted). Rule 59(e) motions serve a limited function of correcting "'manifest errors of law or fact or to present newly discovered evidence.'" (Citations omitted). Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment. (Citations omitted).

Innovative Home Health Care, Inc. v. P.T.-O.T. Associates of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998).

### 1. Compensatory Damages

The defendant argues that a jury award of $13,685.00 in compensatory damages is improper. During his closing argument, Ms. Quigley's attorney asked the jury for a compensatory damages award in the amount of the rent Mr. Winter received for the period of time that Ms. Quigley claimed to be harassed by him. The Court is not persuaded

that this is an improper gauge of damages should the jury find, as it did, that Ms. Quigley was entitled to relief. Furthermore, the Court is not going to adopt the Darby v. Heather Ridge, 827 F. Supp. 1296 (E.D. Mich. 1993) case urged by the defendant for the proposition that, "the usual award for intangible injuries in housing discrimination cases is between $500.00 and 5,000.00". Not only is this case not precedential on this Court, the Court is unwilling to put a static range on the amount of damages a plaintiff may or may not be entitled to. "Awards for pain and suffering are highly subjective and the assessment of damages is within the sound discretion of the jury, (citations omitted), especially when 'the jury must determine how to compensate an individual for an injury not easily calculable in economic terms.'" Jenkins v. McLean Hotels, Inc., 859 F.2d 598, 600 (8th Cir. 1988)(quoting Stafford v. Neurological Medicine, Inc., 811 F.2d 470, 475 (8th Cir. 1987). This is a decision for the jury to make based on the specific facts of each case. Thus, the Court will not disrupt the jury's compensatory damages verdict.

## 2. Punitive Damages

The defendant makes two arguments in relation to the punitive damages award. First, he argues that the Court should not have given the punitive damages instruction to the jury. In the alternative, the defendant argues that the punitive damages award of $250,000.00 is excessive and does not comport with case law in this area.

The Fair Housing Act, 42 U.S.C. § 3613(c)(1), allows for punitive damages for victims of housing discrimination. Punitive damages are appropriate in a FHA case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Badami v. Flood, 214 F.3d 994, 997 (8th Cir. 2000) (citing Smith v. Wade, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). Reckless or callous indifference is the defendant's "knowledge that [he] may be acting in violation of federal law". Badami, 214 F.3d at 997.

The Court is persuaded that giving the punitive damages instruction was proper. The words "evil motive or intent" are so strong as to make it hard to reach , but the Court is

persuaded that a callous indifference to the federally
protected rights of the plaintiff was present. The defendant
implies that he was tricked on the witness stand into
admitting that he knew sexual harassment was unlawful. He
argues that he may have known *at trial* that sexual harassment
was wrong, but that was only due to the "lengthy litigation"
process. Essentially, he claims that he only knew it was
wrong after he was sued. However, this was not the only
evidence in this regard. Much evidence was elicited from both
parties that Mr. Winter had been a landlord for many years and
that he managed numerous properties. Testimony was also
presented that he worked with various governmental agencies to
provide subsidized housing. The lease agreement Ms. Quigley
signed with Mr. Winter states that the landlord is not to
discriminate on the basis of sex. Based upon this evidence,
a jury could infer that Mr. Winter knew that it was unlawful
to sexually harass his tenants, whether he admitted to it at
trial or not. Thus, the Court is persuaded that giving the
instruction was proper.[2]

---

[2]The Court gave the following final jury instruction #23
(<u>See</u> Docket No. 61), which was fashioned after Eighth Circuit
(continued...)

$^2$(...continued)

Model Jury Instruction 5.27C: "In addition to the damages mentioned in other instructions, the law permits the jury under certain circumstances to award punitive damages in order to punish the defendant for some extraordinary conduct.

If you find in favor of the plaintiff and against defendant, and if you find by the preponderance of the evidence that the defendant's conduct <u>only as against the plaintiff was motivated by evil motive or intent, or that the defendant was recklessly or callously indifferent to the plaintiff's rights</u>, (emphasis added here for ease of identification, but not used in jury instruction at trial) then in addition to any other damages to which you find the plaintiff entitled, you may, but are not required to, award the plaintiff an additional amount as punitive damages for the sole purposes of punishing the defendant and deterring the defendant and others from engaging in such misconduct in the future.

If you decide to award punitive damages, you should consider the following in deciding the amount of punitive damages to award:

1. how reprehensible the defendant's conduct was. In this regard, you may consider whether the harm suffered by the plaintiff was physical or economic or both; whether there was violence, deceit, intentional malice, reckless disregard for human health or safety; and whether there was any repetition of the wrongful conduct and past conduct of the sort that harmed the plaintiff;

2. how much harm actually resulted to the plaintiff from the defendant's wrongful conduct and not from the defendant's general conduct;

3. what amount of punitive damages, in addition to the other damages already awarded, is needed, considering the defendant's financial condition, to punish the defendant for his wrongful conduct toward the plaintiff and to deter the defendant and others from similar wrongful conduct in the future;

4. in order to achieve the purposes of punitive damages set forth above, the amount of any punitive damages award

(continued...)

Although giving the instruction was proper, the Court is persuaded that the amount of the punitive damages award does not comport with awards allowed under federal law. When analyzing punitive damages awards, the Unites States Supreme Court has "emphasized the constitutional need for punitive damages awards to reflect (1) the 'reprehensibility' of the defendant's conduct, (2) a 'reasonable relationship' to the harm the plaintiff (or related victim) suffered, and (3) the presence (or absence) of 'sanctions,' e.g., criminal penalties, that state law provided for comparable conduct". Philip Morris USA v. Williams, ___ U.S. ___, 127 S. Ct. 1057, 1061, 166 L. Ed. 2d 940 (2007)(quoting BMW of North America, Inc. v. Gore, 517 U.S. 559, 575-585, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).

Regarding the size of punitive damage awards, the Supreme Court has held that "the longstanding historical practice of setting punitive damages at two, three, or four times the size

_____

[2](...continued)
should bear a reasonable relationship to the amount of compensatory damages you awarded, if any; and
    5.  the amount of possible harm the defendant's conduct could cause the plaintiff in the future."

of compensatory damages, while 'not binding,' is 'instructive,' and that '[s]ingle-digit multipliers are more likely to comport with due process.'" Philip Morris USA v. Williams, ___ U.S. ___, 127 S. Ct. 1057, 1061-1062, 166 L. Ed. 2d 940 (2007)((quoting State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 425, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).

The punitive damages award of $250,000.00 in this case is more than eighteen times the compensatory damages award. The Court is persuaded that, although the jury obviously found the defendant's conduct to be reprehensible, the punitive damages award does not comport with due process. The acts that were directed to this plaintiff are set out on page four of this Order. Therefore, the Court finds it appropriate to reduce the amount of punitive damages to an amount that reflects the seriousness of the jury's award, but that also comports with the parameters set forth by the Supreme Court. The Court will reduce the punitive damages award to $20,527.50, which is equal to one and one half times compensatory damages, for the simple reason that the defendant's conduct as set out in Instruction No. 23, fn. 2 above, can be considered only as to

what he said and did directly to this plaintiff as set out on pages 4 and 5 of this ruling.  This legal premise is supported by the case of <u>Phillip Morris USA v. Williams</u>, 127 S. Ct. 1057, 166 L. Ed. 2d 940, 75 USLW 4101, at 1063-64 (2007) where the court stated:

> Finally, we can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others.  We have said that it may be appropriate to consider the reasonableness of a punitive damages award in light of the *potential* harm the defendant's conduct could have caused.  But we have made clear that the potential harm at issue was harm potentially caused *the plaintiff*.
>
> . . .
>
> Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible-although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse.  Yet for the reasons given above, a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties.

<u>Id.</u>

See also, <u>Williams v. Conagra Poultry Co.,</u> 378 F.3d 790

(8th Cir. 2004), where the court stated at page 797:

> In assessing reprehensibility, however, it is crucial that a court focus on the conduct related to the plaintiff's claim rather than the conduct of the defendant in general. In <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 422-23, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), the Supreme Court emphasized that courts cannot award punitive damages to plaintiffs for wrongful behavior that they did not themselves suffer.

<u>Id.</u>

The Court will therefore **deny in part** and **grant in part** the defendant's motion to amend or alter judgment.

**III.     PLAINTIFF'S POST-TRIAL MOTION**

**a.   Motion for attorney fees**

The FHA allows a prevailing party to recover attorney fees. <u>See</u> 42 U.S.C. § 3613(c). The Supreme Court has held that "a prevailing plaintiff [in a civil rights action] 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937 (1983)(citing S.Rep. No. 94-1011, p. 4 (1976), U.S.Code Cong. & Admin.News 1976, p. 5912)(quoting <u>Newman v. Piggie Park Enterprises</u>, 390 U.S. 400, 402, 88 S. Ct. 964, 966, 19 L. Ed.

2d 1263 (1968)). However, "a plaintiff who has 'prevailed' in the litigation has established only [her] eligibility for, not [her] entitlement to, an award of fees." <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 758 (2nd Cir. 1998). "The district court retains discretion to determine under all the circumstances, what constitutes a 'reasonable' fee (citations omitted), and in appropriate circumstances the court may conclude that, even though a plaintiff has formally prevailed, no award of fees to that plaintiff would be reasonable." <u>Id.</u>

The plaintiff in this case has asked the Court to award attorney fees under 42 U.S.C. § 3613(c)(2), which reads as follows:

> In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney fee and cost.

There has been considerable briefing and argument in relation to this. This is the first case of sexual harassment against a landlord that this Court can remember in this Court.

The plaintiff cites the case of <u>Development Services of Nebraska v. The City of Lincoln, Nebraska</u>, 2007 WL 1959244, as their first legal support for attorney fees. In that case,

21

the United States District Court awarded $249,000.00 plus dollars for attorney fees and $3,720.00 for non-taxable costs. The City of Lincoln had refused to allow the construction of group homes in the City to take care of disabled people. The Court stated that both sides submitted lengthy legal arguments on a myriad of issues from the inception of this case to the end. The case had been pending for nearly three years. This, of course, affected a number of disabled people in the City and at the time of the award, there were 248,744 citizens in the City of Lincoln who would be required to pay this fee.

The next case that the plaintiff cites to the Court for the award of attorney fees is the case of <u>New Hope Fellowship, Inc., v. The City of Omaha, Nebraska</u>, 2006 WL 1479030 (D. Neb. 2006). The plaintiffs had requested that the City adopt a reasonable accommodation procedure that allows persons with disabilities and housing providers with persons with disabilities to request accommodation in connection with their request to construct, use, or operate housing in the City of Omaha. The City had refused to allow such construction. The court awarded $147,000.00 plus dollars in attorney fees and $1,571.00 for non-returnable costs. This matter involved many

disabled people in the City, and the judgment would be paid by some 400,000 inhabitants of the City of Omaha.

The next case that the plaintiff pointed out to the Court is the case of <u>Tenafly ERUV Association, Inc., v. The Burrow of Tenafly</u>, 195 Fed. Appx. 93, 2006 WL 2547253 (3rd Cir. 2006). In that case, Jewish residents brought a civil rights action against the City involving fair housing violations and free speech clauses in relation to construction around their synagogue. The Court ordered $414,000.00 plus dollars for attorney fees to be paid by the 14,302 people of the Burrow of Tenafly.

The next case cited by the plaintiff is <u>Tsombanidis v. The City of West Haven, Connecticut</u>, 208 F. Supp. 2d 263 (D. Conn. 2002). Respective residents sued the City for not making proper accommodations for alcohol and drug addicts. The Court awarded $234,000.00 plus dollars for attorney fees. This, of course, affected all alcohol and drug addicts in the City. The judgment would be paid by the 52,000 plus residents of the City of West Haven.

The next case cited by the plaintiff is the case of <u>Fair Housing Marin v. Combs</u>, 285 F.3d 899 (9th Cir. 2002). In this

case, the district court entered a default judgment for attorney fees for $508,000.00. On page 905 of that opinion, the court sets out that they had entered the default judgment because there were extreme circumstances and the violation was due to wilfulness, bad faith, or fault of the defendant. The court stated the record was clear and undisputed that the defendant repeatedly flaunted even his basic discovery violations after violating court orders. For example, Combs did not only fail to produce documents as ordered, but also misrepresented to both counsel and a district court that the documents did not exist. The district court considered lesser or alternative sanctions and found them inappropriate because the defendant continued to violate court orders despite multiple warnings and a finding that monetary sanctions should be imposed. This case is against one defendant, but it certainly is an unusual situation where the court decided to punish the defendant, which has nothing to do with what fees ought to be allowed in the case now before this Court.

The next case cited by the plaintiff to demonstrate large attorney fees are appropriate is the case of <u>Casey v. The City of Cabool</u>, 12 F.3d 799 (8th Cir. 1993). The case is summed up

on page 800 where it is concluded that the City violated First
Amendment rights by discharging an employee for making private
statements critical of the city officials and policies and
awarded attorney fees and costs totaling approximately
$70,000.00.  This judgment would be paid by the 2,137 citizens
of the City of Cabool.

The next discussion by the plaintiff as to how the Court
should treat the matter of attorney fees is on page 3 of the
plaintiff's brief in support of the motion for attorney fees
(Docket No. 83).  On that page, they cite Robert G. Schwemm,
the author of "Housing Discrimination Law and Litigation."
Mr. Schwemm, as set out on page 3 of that document, states as
follows:

> The entitlement standard for prevailing
> plaintiffs is so favorable that fee awards
> should be made to them "almost as a matter
> of course."  The wording of Title  VIII's
> fee provision may appear to give the trial
> court a good deal of discretion over this
> matter, but in fact "the court's discretion
> to deny a fee award to a prevailing party
> [under such a statute] is narrow."

The  Court  is  well  aware  that  Mr.  Schwemm  is  a
distinguished author, however, his conclusions are not a solid
legal precedent that this Court can follow.  Any author that

says that the wording of the United States Code "may appear to give the trial court a good deal of discretion. . .," but it really does not, is a comment concerning the enactment of laws by Congress being susceptible to almost the opposite interpretation of what the code section really says.

The Court is also aware that in the plaintiff's reply brief, Docket 85, pp. 2-3, that the plaintiff's case of <u>Bond v. Stanton</u>, 630 F.2d 1231, 1233 (7th Cir. 1980)(quoting <u>Davis v. Murphy</u>, 587 F.2d 362, 364 (1968), states as follows:

> A prevailing plaintiff under civil rights legislation should receive attorney fees almost as a matter of course.

This, of course, is a Seventh Circuit opinion, and is not binding on this Court.  But, the words "almost as a matter of course" certainly give this Court some discretion.

The Court is also aware that in the plaintiff's reply brief, Docket 85, p. 3, the plaintiff cites <u>Meritor Savings Bank FSB, v. Vinson</u>, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986), for the proposition that:

> Sexual harassment which creates a hostile or offensive environment as members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman

26

> run the gauntlet of sexual abuse in return
> for the privilege of being allowed to work
> and make a living can be as demeaning and
> disconcerting as the harshest of racial
> epithets.

This is an effort by the plaintiff to show that the cases involving sexual discrimination in the renting of houses should be treated the same as work-related sexual abuse cases. This Court has no real problem with that except to say that the words "run a gauntlet of sexual abuse" suggests a prolonged, hostile or offensive environment that is not really present in the case now before this Court.

The plaintiff in this case has been represented by a firm of attorneys that certainly have a fine reputation. This Court in no way implies that in the cases as set out above against cities for discriminating conduct against a group of disabled people, people with alcoholic and/or drug problems, and other discrimination, are wrong. The plaintiffs in those cases were entitled to substantial attorney fees. The plaintiff's brief in support of attorney fees on page 4, Docket No. 71-2, sets out as follows:

> In this case, Pat Johnson, the Sioux City
> Human Rights investigator, testified at
> trial that she requested Baird Holm law
> firm to represent Quigley instead of the

> City of Sioux City because of Scott P.
> Moore's skill and reputation in handling
> fair housing litigation.

This is a nice compliment to Mr. Moore.

On page 7 of that same brief at Docket 71-2, in discussing the background of Mr. Moore, it states that he has represented the Government in housing civil enforcement section and tried numerous cases "including cases alleging sexual harassment by a landlord in housing."

There is no setting out of any attorney fees that were appropriate in any of those cases, and in the entirety of well-prepared briefs, the plaintiff's attorneys do not set out a single case of where attorney fees were awarded in large amounts against a landlord in a sexual discrimination case. The Court asked plaintiff's counsel about fees in those cases. Counsel answered, "We have several of those cases, but they were settled." Here, as is noted, the plaintiff is asking for $118,000.00 plus dollars for attorney fees, plus $1,587.88 for unpaid costs.

The defendant's brief at Docket 86, p. 2, defendant's attorneys state the proposition that if a man who merely brushes his fingers against a woman's stomach is to receive an

award against him of large attorney fees, then they ask what is left to punish a landlord who actually requires sex from his tenants?  This, of course, is an understatement of the seriousness of the facts alleged by the plaintiff, but it raises the question of whether or not there may be any limitations on the matter before this Court.

The Court is reminded of a case way back in 1976 entitled United States v. Kloberdanz, No. CR 76-2013 (N.D. of Iowa, Nov. 30, 1976).  In that case, a defendant, a rural mail carrier for 32 years, lost his job and retirement benefits and was prosecuted for mail theft when he failed to deliver a third class letter and free copies of a weekly farm newspaper to a dead woman on his route.  Believing that the postman had already been punished too severely, Judge Edward J. McManus fined the defendant $0.25 on each of two counts saying that it was a two bit case and he was going to receive a two bit fine.

This matter is included in this Order because it shows that court's have a right to and should look over the entire situation as to just what has happened and what the effect is upon the defendant.  In the case of Kloberdanz, the defendant, as mentioned above, no longer had a job and no longer had a

pension coming.

In the case now before the Court, this Court is persuaded that this case is not a $383,000.00[3] case; it is not a $284,000.00 case; it is not a $184,000.00 case; it is not an $84,000.00 case. The Court believes it is appropriate to determine or consider the effect on the defendant, whether he can pay for it or not. He is going to have to pay any judgment that this Court arrives at. He has to pay his own attorney fees, and he has had to pay taxes and utilities for the premises where plaintiff was a resident for the time she was there.

The Court is well aware that this is not a two bit case and by no means implies that. This is a serious matter involving dumb and inappropriate acts by the defendant, Dale Winter. The Court has already ruled that some of his conduct is sufficient to award punitive damages; however, as set out in the example of the Kloberdanz case above, there is still a matter of justice, there is still a matter of basic fairness, there is still a matter of equity.

_____

[3]$250,000.00 in damages; $13,000.00 special damages; $120,000.00 attorney fees, plus fees.

30

The Court in Instruction No. 23, discussed on pages 15-17 above, told the jury that the punitive damages award would only be based upon acts directly involving the plaintiff. These acts did not involve a gauntlet of sexual abuse, as discussed in the Meritor case on page 26 of this Order. The acts here did not involve any permanent, physical or mental damage to the plaintiff. The Court is persuaded that the plaintiff's attorneys, even at the request of Pat Johnson, the City's Human Rights Commissioner Investigator, can take this case and assume that they can run up the same kinds of high attorney fees as the cases discussed earlier in this Order and then in effect tell the Court that it has no alternative but to pay them. The Court is persuaded that while they certainly are good lawyers and they certainly did a good job, that under the circumstances set out above, attorney fees in the sum of $20,000.00 are appropriate. There is no need to discuss the lodestar calculations or the skill and experience of the plaintiff's lawyers. Justice, fairness and equity require that the Kloberdanz theory kick in.

IV. **CONCLUSION**

**IT IS THEREFORE HEREBY ORDERED** that the defendant's

31

motion for judgment as a matter of law, Docket No. 68, is **denied**.

 **IT IS FURTHER HEREBY ORDERED** that defendant's motion for a new trial, Docket No. 68, is **denied**.

 **IT IS FURTHER HEREBY ORDERED** that defendant's motion to alter or amend judgment, Docket No. 68, is **denied in part** and **granted in part**.

 The defendant shall pay the plaintiff $13,685.00 in compensatory damages and $400.00 for breach of contract damages, as was determined by the jury.

 The jury verdict of $250,000.00 in punitive damages is reduced to $20,527.50, to be paid by the defendant.

 **IT IS FURTHER HEREBY ORDERED** that the plaintiff's motion for attorney fees and costs, Docket No. 71, is **granted** in the amount of $20,000.00, in attorney fees and $1,587.88 in costs, to be paid by the defendant.

 **IT IS SO ORDERED** this 9th day of October, 2008.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa